# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| HASELECT-FTM MEDICAL RECEIVABLES LITIGATION FINANCE FUND SP, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No.: |
| INFINITY CAPITAL MANAGEMENT, INC. ) ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff, HASelect-FTM Medical Receivables Litigation Finance Fund SP ("**Lender**"), by its undersigned counsel, for its Complaint against Defendant Infinity Capital Management, Inc. ("**Borrower**") states as follows:

## PRELIMINARY STATEMENT

1. Plaintiff, Lender, is a medical receivables investment fund that loaned millions of dollars to Defendant, Borrower. That loan, and the parties' mutual agreeements relating to that loan, are memorialized in the Second Amended & Restated Loan and Security Agreement and Promissory Note (hereinafter referred to as the "Loan Agreement" and the "Note", together the "MLA".). A true and correct copy of the MLA is attached hereto as *Exhibit A*. A s a result of Borrower's breaches of contract, this lawsuit is now necessary.

1

## PARTIES

2. Plaintiff HASelect-FTM Medical Receivables Litigation Finance Fund SP is a segregated portfolio company of HedgeACT International SPC Ltd., a Cayman Islands corporation, with its principal place of business in La Grange, IL.

3. Defendant Infinity Capital Management Inc. is a Nevada Corporation, with its principal place of business located in Henderson, NV.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because Plaintiff is a citizen of Illinois and Defendant is a citizen of Nevada; and because the amount in controversy exceeds $75,000.

5. Venue is proper in this Court pursuant to 28 U.S.C.§ 1391(b) as the actions, or portions thereof, giving rise to this suit occurred in Cook County, Illinois. Moreover, pursuant to paragraph 9.10 of MLA, the Borrower explicitly agreed that "this Agreement and all acts and transaction hereunder and all rights and obligations of Lender and Borrower shall be governed by the laws of the State of Illinois. Each party (a) agrees that all actions and proceedings relating directly or indirectly to this Agreement shall be litigated in courts located within Illinois; (b) consents to the jurisdiction and venue of any such court and consents to service of process in any such access or proceeding by personal delivery or any other method permitted by law; and (c) waives any and all rights it may have to objects to the jurisdiction of any such court, or to transfer or change the venue of any such action or proceeding." MLA § 9.1. (***Exhibit A***).

## GENERAL ALLEGATIONS

A.  **Lender's Agreement with Borrower.**

6. Lender is a pooled investment vehicle.

7. The MLA constitutes a valid and enforceable contract.

8. Lender has fully performed their obligations pursuant to the MLA

9. Lender provided loans to Borrower, pursuant to the MLA.

10. These loans are further evidenced by a Promissory Note executed by Borrower.

11. Lender's first loan to Borrower was made in February 2019, and Lender made subsequent further extensions of credit that were document by loan agreements and promissory notes.

12. The MLA superseded and restated the prior loans made by Lender to Borrower as well as extended further credit to Borrower.

13. Pursuant to the MLA, Borrower granted a security interest in all of its assets to Lender. MLA § 4.1.

14. Lender perfected its security interest through the filing of a UCC-1 with the Nevada Secretary of State. A true and correct copy of the UCC Financing Statement related thereto is attached hereto as ***Exhibit B***.

15. Borrower used these loans to purchase receivables from medical providers that are the subject of or arose in relation to personal injury claims.

16. For example, these receivables might include treatment of a patient involved in a car accident, when the other drivers' insurance is refusing to pay the medical bills.

17. By purchasing the medical receivable at a discount, the patient receives necessary medical treatment, the medical provider receives immediate cash flow, and Borrower purportedly earns a profit when the final payment is complete.

18. Borrower was supposed to pay interest to Lender while Borrower holds the receivables, and Borrower was supposed to pay off the loan principal either (a) when the personal injury claims are settled or otherwise resolved or (b) within 30 months of the original lending date.

19. Lender earns returns for investors, in part, by providing loans to Borrower under the terms of the MLA.

20. Section 7.1 of the MLA provides that, while the MLA is in effect, Borrower shall not: "(1) Engage in any business activities substantially different than those in which Infinity is presently engaged; (2) cease operations, liquidate, merge, transfer, acquire, or consolidate with any other entity, change its name, dissolve, or transfer or sell Collateral out of the ordinary course of business; or (3) Borrower shall not declare or pay any dividend or other distribution (whether in cash or in kind) on any class of its stock."

21. Section 7.4 of the MLA provides that, while the MLA is in effect, Borrower "shall not incur any indebtedness of any kind" other than from Lender.

22. Borrower understood that, in drafting the exclusivity provision in MLA, it was entering into an exclusive relationship so that Borrower would only secure assets on behalf of Lender, provided Lender had sufficient capital to meet Borrower's needs, which capital Lender did possess at all times relevant to this Complaint.

**B.     Lender's breaches and other misconduct**

23.   Borrower has breached the MLA by, inter alia:

a.   Admitting to a materially adverse change in Borrower's financial condition and anticipatory breach of the MLA, "*a material adverse event has occurred* which causes Lender to be under secured or feel *that Borrower's ability to repay the Loan has been reduced.*" MLA § 8.1(h) (emphasis added).

b.   Failing to permit Lender to examine and audit Borrower's books, records, and other corporate documents.

c.   Failing to Lender permit to examine and inspect its collateral, which includes substantially all of Borrower's assets, including but not limited to deposit accounts.

d.   Failing to timely provide accurate financial statements. MLA § 6.2(1) and MLA § 6.2(2).

e.   Failure to maintain collateral free and clear of other encumbrances and rights of third parties. MLA § 7.3 and MLA § 4.2(a).

f.   Engaging in substantially different business activities. MLA § 7.1(1).

g. Borrower falsely represented and warranted to Lender that certain parties were not involved (whether formally or informally) in the management of Borrower, nor do any of those parties have any ownership interest in Borrower or in any entity controlled by, controlling, or under common control with Borrower. MLA § 5.12.

h. Breach of covenant not to incur any indebtedness. MLA § 7.4. Based on Borrower's financial statements, Borrower obtained loans without consulting Lender and seeking its consent.

i. Generally failing to perform obligations under the MLA. MLA § 6.6. As noted above, Borrower has failed to timely perform its duties, and in other instances, the Borrower has completely failed and refused to perform its obligations under the MLA.

24. In further violation of the MLA, Borrower currently serves as sub-advisor for a different fund not affiliated with Lender.

25. Borrower signed a sub-advisor agreement with said fund in June, 2020.

26. Borrower began purchasing receivables on behalf of said fund in June, 2020.

27. On information and belief, Borrower has purchased approximately $12.2 million in receivables on behalf of said fund, in violation of the MLA.

28. Borrower is responsible for finding medical receivable assets for said fund to purchase and to collect the receivables on behalf of the fund.

29. As a so-called sub-advisor to other fund(s), Borrower has engaged in a new business venture that undermines its obligations to the Lender and in violation of Borrower's duties set forth in the MLA.

30. Borrower has not submitted a draw request to Lender since April, 2020.

31. Lender never refused a draw request from Borrower.

32. On or about May 20, 2021, Lender demanded that Borrower do the following:

   1. Permit Lender to examine and audit Borrower's books and records, MLA § 6.1, including inspection of all Collateral for the Loan and to make copies of the same. MLA § 6.9.

   2. Borrower shall provide an audited balance sheet and income statement for the most recent fiscal year. MLA § 6.2(1).

   3. Borrower shall provide copies of its balance sheet and income statement for the first quarter of 2021. MLA § 6.2(2).

   4. Borrower shall inform Lender in writing of (a) all material adverse changes in Borrower's financial condition, (b) all existing and threatened . . . litigation, claims . . . or similar actions which are reasonably likely to have a material adverse effect on the financial condition of Borrower[.]" MLA § 6.3.

   5. Borrower shall identify all business activities in which it is presently engaged that are substantially different than those in which Borrower was engaged at the time of the execution of the MLA. MLA § 7.1(1).

   6. Borrower shall identify all parties involved in the management of Borrower and all of its owners or those having or claiming an economic interest in the income or equity of Borrower at any time since the execution of the MLA, including in any entity controlled by, controlling, or under common control with Borrower. MLA § 5.12.

   7. Borrower shall identify any indebtedness of any kind (including any further indebtedness associated with Permitted Liens) other than from Lender after the Effective Date. MLA § 7.4.

A true and correct copy of the May 20, 2021, demand letter is attached hereto as ***Exhibit C*** (hereinafter, the "**May 20 Letter**").

33. The May 20 Letter was sent to permit Lender to fully and completely investigate and understand the scope of Borrower's conduct in violation of the MLA.

34. Lender sent the May 20 Letter for the reasons set forth therein, and because Lender has reason to believe that Borrower has double booked the claims used to secure Lender's loans with those related to this other fund, and may also have paid collections from claims securing Lender's loans to said other fund.

35. Lender cannot know the extent of the double booking because there has been a denial of access to Borrower's records in violation of the MLA.

36. As set forth in Borrower's response to the May 20 Letter, a true and correct copy of which is attached hereto as ***Exhibit D***, Borrower has also notified Lender that it will not be making principal payments on the loans due under the MLA as they become due.

37. This admission, coupled with all of the other breaches and defaults set forth in the correspondence, resulted in Lender demanding full payment of all amounts due under the MLA as set forth in its letter dated June 25, 2021. A true and correct copy of the June 25 Letter is attached hereto as ***Exhibit E***.

38. To date Borrower has failed and refused to honor its obligations and repay the loans as required under the MLA and the June 25 Letter.

39. As of May 31, 2021, Lender has been damaged in an amount in excess of $14,126,860, and continues to accrue additional damages in attorneys' fees, costs, interest, and all other amounts due under the MLA.

## COUNT I
### Breach of Contract – Against Borrower

40. Lender re-alleges and incorporate paragraphs 1 through 39 of this Complaint, as though fully set forth herein.

41. The MLA constitutes an enforceable contract and Lender has fully performed their obligations pursuant thereto.

42. Borrower has breached the MLA as alleged above by:

    a. Admitting to a materially adverse change in Borrower's financial condition and anticipatory breach of the MLA;

    b. Failing to permit Lender to examine and audit Borrower's books, and records;

    c. Failing to Lender permit to examine and inspect its collateral;

    d. Failing to timely provide accurate financial statements;

    e. Failure to maintain collateral free and clear of other encumbrances and rights of third parties;

    f. Engaging in substantially different business activities and other false representations as detailed above.

43. As of May 31, 2021, the following sums (collectively, the "**Balance Due**") are due:

| | |
|---|---:|
| Principal: | $10,351,972 |
| Unpaid MLA § 1.3(c) fee: | 87,500 |
| Interest through May 31, 2021: | 3,051,648 |
| Six percent (6%) of Advances (MLA § 1.6): | 635,740 |
| **Total:** | **$14,126,860** |

44.     The Balance Due also includes additional interest and other fees that are now due and owing or continue to accrue from and after May 31, 2021.

**WHEREFORE**, Lender respectfully requests that this Court enter an order finding in favor of Lender on Count I and providing the following relief:

(a)     Awarding Plaintiff money damages in an amount to be determined at trial:

(b)     Awarding Plaintiff's attorneys' fees pursuant to the terms of the MLA;

(c)     For entry of judgment of foreclosure and UCC sale;

(d)     For entry of a judgment that Lender is adjudged and declared to be a first, valid and subsisting lien against the Collateral and that the lien is prior and superior to all other the liens and claims;

(e)     For reasonable attorneys' fees, costs, and expenses through the date of sale;

(f)     An order allowing Lender to exercise any and all rights granted or reserved to the Lender under the MLA

(g)     pre- and post- judgment interest; and

(a)     Such other and further relief that the Court deems just and proper.

Date:  July 22, 2021

                        Respectfully submitted,

                        **HASELECT-FTM MEDICAL RECEIVABLES LITIGATION FINANCE FUND, SP,**

                        By: */s/ John N. Hourihane, Jr.*
                              *One of its Attorneys*

| | |
|---|---|
| Thomas C. Cronin | John N. Hourihane, Jr. (IL Bar #6256107) |
| CRONIN & CO., LTD. | JOHN N. HOURIHANE, JR. LTD. |
| 120 N. LaSalle Street, 20th Floor | 120 North LaSalle Street, 20th Floor |
| Chicago, Illinois 60602 | Chicago, Illinois 60602 |
| 312.500.2100 | 312.782.6856 |
| *tcc@cronincoltd.com* | *john@hourihaneltd.com* |
| *admin@cronincoltd.com* | |

*Attorneys for Plaintiff*